Supervisors of Kewaunee County vs. Decker.

SUPERVISORS OF KEWAUNEE COUNTY VS. DECKER.

PLEADING.

1. A single count of a complaint cannot be permitted to combine several causes of action of different kinds — as one in tort, one for money demand on contract, and one in equity.

2. On demurrer to a complaint, or any count thereof, the court must determine *what* cause of action such complaint or count is designed to state, and then whether it states facts sufficient to constitute *such* a cause of action; and if not the demurrer must be sustained though facts may be stated sufficient to show that plaintiff has a cause of action of a different character.

3. In determining the nature of the cause of action designed to be stated, reference may be had to the character of the *summons* in the action.

4. In this case, the complaint containing (in the same count) averments appropriate to an action for money had and received, and others appropriate to an action in tort for the *conversion* of money, the summons which was *for relief*, held, to show that the action must be treated as one in *tort*, and not one upon contract.

5. A general charge that the defendant acted fraudulently or wrongfully, or made false or fraudulent representations, is not sufficient in an action of tort, but the nature of the false, fraudulent or wrongful acts or statements should be specifically alleged, so as to apprise defendant of what is meant to be proved.

6. Thus, in an action for the wrongful conversion by defendant of moneys received by him on the sale of tax certificates as agent for the plaintiff county, etc., where a resolution of the board of supervisors of said county is set forth, showing that the board, on a certain day, directed county orders to be issued to defendant for a specified sum, as being the amount due him on settlement with the county to that date as agent for the sale of tax certificates, an averment that said resolution was passed by mistake on the part of the board, "and by and on account of the fraudulent representations of the defendant"—is defective as not showing *what* were the representations thus made.

7. The judgment demanded being for the amount of numerous small sums alleged to have been paid defendant as clerk of the board of supervisors and agent of the county during a long series of years, between 1858 and 1869, it is averred that on the 2d of June, 1870, the plaintiff board demanded of defendant that he pay over to the county "the balance of all moneys remaining in his hands and received by him as such clerk and agent, which defendant then and there refused and neglected to pay over." *Held,*

(1.) That in the absence of any averment to the contrary, it must be *presumed* that defendant had an *annual* accounting with the board during the period in which he held the office of clerk, and had settled as required by law.

(2.) That in order to show a conversion of the sums mentioned in the complaint, the request should be alleged and shown to have been a *particular* one, by which his attention was called *to the very sums or items*, and all of them which it is claimed he should have accounted for and paid over; and it should further appear that reasonable time and opportunity was afforded him to examine such items, and to inspect the public records, documents and vouchers, and that he had then wrongfully refused to account for and pay over the money.

APPEAL from the Circuit Court for *Kewaunee* County.
Action for recovery of money alleged to belong to the county of Kewaunee, and to have been converted by defendant *Decker*, to his own use, he being the clerk of the plaintiff board of supervisors. The opinion states the case. Defendant having de-

murred to the complaint for insufficiency, the demurrer was overruled, and defendant appealed.

*Felker & Weisbrod*, for appellant.

*J. D. Markham* (with *Gillet & Taylor*, of counsel), *contra*.

DIXON, C. J. It would certainly be a most anomalous and hitherto unknown condition of the laws of pleading, were it established that the plaintiff in a civil action could file and serve a complaint, the particular nature and object of which no one could tell, but which might and should be held good, as a statement of two or three or more different and inconsistent causes of action, as one in tort, one upon money demand on contract, and one in equity, all combined or fused and moulded into one count or declaration, so that the defendant must await the accidents and events of trial, and until the plaintiff's proofs are all in, before being informed with any certainty or definiteness, what he was called upon to meet. The proposition that a complaint, or any single count of it, may be so framed with a double, treble, or any number of aspects, looking to so many distinct and incongruous causes of action, in order to hit the exigencies of the plaintiff's case or any possible demands of his proofs at the trial, we must say, strikes us as something exceedingly novel in the rules of pleading. We do not think it is the law, and, unless the legislature compels us by some new statutory regulation, shall hereafter be very slow to change this conclusion.

Counsel for the defendant in this action suppose the complaint herein to be intended and to be one in trover, charging or seeking to charge the defendant with the wrongful conversion of certain moneys which came into his hands as a public officer, and which belonged to the plaintiff, and acting upon such supposition, they have demurred to the complaint as not stating facts sufficient to constitute that cause of action. It would be unfair to say that the learned counsel for the plaintiff equivocate on the point, nor is it true that they take issue with

the counsel for the defendant as to the nature of the complaint. They rather concede than otherwise, that the complaint is and was intended to be one in tort for the conversion, but they at the same time insist, that if it is not good, as a complaint of that kind, it is sufficient as a complaint or count in an action for money had and received, and being sufficient for that purpose, they argue that the demurrer was properly overruled, and the order of the court below should be affirmed on that ground. In other words, their position is that it is a question now open to speculation and inquiry on this demurrer, whether, upon all or any of the facts stated in the complaint, taken collectively or separately, or even by severing the allegations themselves, so as to eliminate or discard certain portions of them as surplusage, a cause of action of any kind is or can be made out, and, if it be found that it can, then the demurrer should be overruled. To show that the complaint may be upheld as one for money had and received for the use of the plaintiff, and the action considered as one of that kind, counsel gravely contend that the averments that the defendant made fraudulent representations, and acted falsely, fraudulently and wrongfully, in claiming and withholding the moneys, and that he converted the same, etc., may be disregarded and rejected as surplusage.

In support of this position, counsel cited several New York decisions, and some in this court, where, *after trial and judgment, or after issue has been taken upon the merits, or after the trial has commenced and the plaintiff's case is closed,* it has been held that such allegations may be disregarded. The decisions were in actions like the present and others involving a somewhat similar question under the circumstances above stated, and were made in favor of a good cause of action, proved or proposed to be, and which by a fair and reasonable interpretation of the pleadings could be said to be within the scope of them, or to be fairly mapped out and delineated by the averments, so that the defendant was apprised of the demand made against him, and of the facts relied upon to establish it. The great liberality of the

code, and the broad powers of amendment conferred and enforced upon the courts under such circumstances are well known.   It is declared that no variance between the allegation in a pleading and the proof, shall be deemed material, unless it shall actually mislead the adverse party to his prejudice in maintaining his action or defense upon the merits, and that when the variance is not material, the court may direct the fact to be found in accordance with evidence, or may order an immediate amendment without costs.   Most liberal provision is also made for amendments in other respects, by adding to or taking from the pleadings before or after judgment in furtherance of justice. Where an answer is put in it is provided that the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue.   And it is furthermore declared that the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party, and that no judgment shall be reversed or affected by reason of such error or defect.   These provisions for the most part, if not entirely, relate to the proceedings in an action after issue joined on the merits, upon or after the trial, or after judgment on the merits, when the facts are made to appear and the substantial rights of the parties are shown.   They are enacted in amplification and enlargement of the rules of the common law on the same subjects, by which it is well understood there were many defects, imperfections and omissions, constituting fatal objections on demurrer, which were used after issue joined, and a trial or verdict and judgment on the merits.   The cases cited by counsel are all of them manifestly such as fall within these provisions and rules, and none of them touch or have any bearing upon the question or case as here presented. No case arising upon demurrer to the complaint is cited, and it is believed none can be holding any such doctrine as that contended for.   Most of the cases were where no objection was taken until after issue joined and trial had and judgment ren-

dered on the merits, and then the objection was brought forward as a ground of reversal, and generally in the appellate court, that the plaintiff had declared in tort and recovered on contract, or *vice versa*, or had sued in equity and recovered judgment at law, or that equitable relief had been granted in an action commenced and tried as one on the law side of the court. In all the cases the objection had been waived by failure of the party to take it properly and in season, and under the liberal powers of amendment and curative provisions of the code, it was held that the proceedings or judgments, just in themselves, should not be disturbed upon points of mere form. Further or more particular comment upon the case, is deemed unnecessary. It suffices to repeat the references as found in the printed argument of the counsel, *Barlow v. Scott,* 24 N. Y., 40 ; *Byxbie v. Wood,* ib., 607 ; *Austin v. Rawdon,* 44 N. Y., 63 ; *Greason v. Keteltas,* 17 id., 491 ; *Emery v. Pease* 20 ib., 62 ; *Conaughty v. Nichols,* 42 ib., 83 ; *Wright v. Hooker,* 10 ib., 51 ; *Walter v. Bennett,* 16 ib., 250 ; *Stroebe v. Fehl,* 22 Wis., 347 ; *Hopkins v. Gilman,* ib., 481 ; *Tenney v. The State Bank,* 20 Wis., 152 ; *Leonard v. Rogan,* ib., 540 - *Samuels v. Blanchard,* 25 ib., 329 ; *Vilas v. Mason,* ib., 310, 328.

It thus appears that the authorities relied upon do not sanction the position, that a complaint in the first instance and where challenged by demurrer, may be uncertain and ambulatory, purposely so made, now presenting one face to the court and now another, at the mere will of the pleader, so that it may be regarded as one in tort, or one on contract, or in equity as he is pleased to name it and the necessities of argument require, and if discovered to be good in any of the turns of phases which it may thus be made to assume, that it must be upheld in that aspect, as a proper and sufficient pleading by the court. As already observed, the opinion of the court is quite to the contrary. We have often held that the inherent and essential differences and peculiar properties of actions have not been destroyed, and from their very nature cannot be. *Howland v.*

*Needham,* 10 Wis. 495, 498. These distinctions continuing, they must be regarded by the courts now as formerly, and now no more than then, except under the peculiar circumstances above noted, can any one complaint or count, be made to subserve the purposes of two or more distinct and dissimilar causes of action at the option of the party presenting it. It cannot be " fish, flesh or fowl " according to the appetite of the attorney preparing the dish set before the court. If counsel disagree as to the nature of the action or purpose of the pleading, it is the province of the court to settle the dispute. It is a question when properly raised which cannot be left in doubt, and the court must determine with precision and certainty upon inspection of the pleading to what class of actions it belongs or was intended, whether of tort, upon contract, or in equity, and, if necessary or material, even the exact kind of it within the class must also be determined. See *Clark v. Langworthy,* 12 Wis. 441; and *Gillett v. Treganza,* 13 Wis. 472.

This is not only in harmony with the decisions above referred to, but with all the decisions of this court bearing upon the question, and we know of none elsewhere in conflict. It is in harmony with those decisions which have been made, that an application to amend should be denied, which proposes to entirely change the cause of action sued upon, or to introduce a new one of a different kind. *Newton v. Allis,* 12 Wis., 378; *Sweet v. Mitchell,* 15 ib., 641, 664, and 19 ib., 528; *Larkin v. Noonan,* 19 ib., 82; *Stevens v. Brooks,* 23 ib, 196. It is in harmony with the decision in *Scheunert v. Kaehler,* 23 Wis., 523, where upon demurrer to the counter-claim of the defendant, the court inspected the complaint and determined the nature of it, and said that " the subject of the action is the tort or wrong which was committed in the conversion of the money. That is the foundation, and sole foundation, of the plaintiff's claim in this form of action; for unless the money was unlawfully converted, the action cannot be maintained." Counsel criticise this language and say that it is inconsistent with some of the cases

first above cited. We answer clearly not, when correctly understood and applied, that is, in case proper objection was taken to a recovery upon any other ground, or upon any proofs short of those establishing the cause of action stated in the complaint. Counsel say, however, and we think with entire correctness, that after demurrer sustained to the counter-claim, as was there done, on the ground that the complaint was in tort, there could be no recovery in the action except for a tort. The greatest injustice might result to the defendant if this were not so, or, if having been deprived of his counter-claim on the ground that the action was in tort, the plaintiff should afterwards be permitted to recover against him as upon contract.

And the same view is also in keeping with the decision of this court recently made in *Anderson v. Case*, 28 Wis., 505, where in an action *ex delicto* for the seizure and conversion of certain personal property, the plaintiffs claimed that the judgment appealed from should be affirmed by this court as one for money had and received, being the proceeds of the sale of the property by the defendants which the evidence on the trial showed had been made and the price received by them in money. But it was held against the plaintiffs, and the judgment was reversed because of the substantial difference between the action for the wrongful conversion and the action for money had and received, and because, in the former, execution goes against the body of the debtor as well as his property, while in the latter it goes only against his property. That decision is authority for the position that to justify the rendition of judgment upon proof of liability *ex contractu*, where the form of action is *ex delicto*, the proceedings must be changed by amendment so as to conform to the facts proved and the nature of the cause of action established, or otherwise that the judgment itself must distinctly specify and show that the recovery was upon contract and not in tort.

And directly also in support of the same view, that the court must ascertain and decide definitely what the character of the pleading is, and the nature of the cause of action stated in it, or

intended to be, is the late case of *Lee v. Simpson*, 29 Wis., (June T., 1871), which likewise arose on demurrer to the complaint. And see also *Ragan v. Simpson*, 27 Wis., 355; where it was held in an action for unlawful detainer, taken by appeal to the circuit court, that the defense set up and proved that one of the defendants was a mortgagor in possession, with right to redeem, could not be treated at the instance of the plaintiffs on an action by the defendants, or one of them, to redeem from the mortgage, but that the defendants were entitled to a judgment of dismissal.

But the language in our own reports which most nearly indicates the true rule of law and practice in cases of this nature, is that of Mr. Justice PAINE in *Samuels v. Blanchard, supra,* where, speaking of the complaint in that case, he says: "If the question had been presented properly at the preliminary stage of the case, the character of the summons, taken in connection with the form of the allegations of the complaint, might have required it to be decided that the action must be in strictness regarded as upon contract." And again, he says: "The facts that, if the action was considered as one upon contract, the objection appeared on the face of the complaint and might have been taken advantage of by demurrer, and that no demurrer was interposed, and that both parties introduced fully their evidence, as to the whole controversy, in the absence of anything showing that this distinct question was raised at all in the court below, we think sufficiently establish the claim of the respondent's counsel, that it was tried there as an action of tort, without objection, and must be so treated here."

The foregoing language indicates, not only that the sufficiency of the pleading must be determined on demurrer to it, but also the true nature and object of it, or what the particular kind or cause of action stated is, or is designed to be, and that for this purpose the character of the summons may be taken into consideration in connection with the form of the allegations of the complaint. And this we take to be the true rule, that the

court must in the first instance decide with certainty what the specific cause of action counted and relied upon is, and, having decided that, it must next determine whether the complaint contains a sufficient statement of such cause, and if it does not, the demurrer must be sustained. In the present case the summons is for relief, and not one for a money demand arising on contract. The summons is appropriate, therefore, only to the action of tort or for damages for the wrongful conversion of the moneys. It corroborates the intention of the pleader as shown by the allegations of the complaint, to sue in that form of action, and from both, we think it clearly enough appears, that the action is and was designed to be in tort and not upon contract; and by this standard or by the rules of pleading which should govern in an action for the wrongful conversion of the moneys, must the sufficiency of the averments be tested.

Considered as an action of trover, or one sounding in damages for the tortious conversion of the moneys, the complaint is in several respects faulty and imperfect. For the purpose of showing the tort or characterizing the conduct of the defendant as improper and wrongful, and thus to establish a conversion of the moneys, or a portion of them, or the "*excess*" received from the sales of the tax certificates belonging to the county, the complaint charges that the defendant converted such moneys to his own use, "falsely and fradulently claiming he had sold said certificates, as agent of said county, for the sums specified on their face, and for no more, or wrongfully and unlawfully claiming that as such agent of said county he was entitled to any excess he might receive on such sales over and above the amount specified on the face of said certificates," etc. And again, for the purpose of giving like character to the conduct of the defendant and showing the wrong, it is charged that the resolution of the board of supervisors of the county of the 9th day of January, 1869, was passed by mistake on the part of the board, and "by and on account of the fraudulent representations of the defendant, and that in adopting the resolution the board acted

entirely upon the fraudulent statements then and there made by the said *Decker.*" The allegation first referred to is in the alternative, itself a defect, but the serious objections to both are that they state no facts showing in what the fraud, falsity, or wrongfulness of the defendant consisted, or how he was guilty of them. A general charge that a party acted fraudulently, falsely or wrongfully, or that he made fraudulent representations or statements, amounts to nothing, there must be a specification of facts to justify it. It is at most but a mere inferential statement, too vague and uncertain to apprise the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse it, or to inform the court whose duty it is to declare the law arising upon the facts. *Drum v. Holton,* 1 Pinney Wis. R., 456 and authorities cited.

With respect to the interest upon the redemption moneys paid to the defendant upon lands and lots sold for taxes, of which the county held the certificates of sale, which interest it is averred the defendant has not accounted for or paid over to the county, or to his successor in office, the charge is that "although often requested so to do, he has heretofore refused and still does refuse so to do, and has converted the whole thereof to his own use." The conversion of the moneys received for illegal assessments is similarly charged.

And near the close of the complaint and referring to all the money mentioned in it, for the conversion of which the action is brought, the demand and refusal relied upon to show conversion, is alleged in these words: "On or about the 2nd day of June, A. D. 1870, the said board of supervisors made and caused to be made, a demand upon the said *Decker,* that the said *Decker* pay over to the county of Kewaunee the balance of all moneys remaining in his hands and received by him as such clerk and agent as aforesaid, which said *Decker* then and there refused and neglected to pay over."

The defendant, it appears, had been clerk of the board of supervisors of the county for several consecutive official terms

during the period of twelve years, commencing on the first day of January, 1858, and the moneys alleged to have been received and not accounted for, or paid over, but converted by him to his own use, are averred to have been paid to him in his capacity of clerk on divers days and times after the first day of January, 1858, and before the first day of January, 1869. The only accounting and settlement between the defendant and the board of supervisors, averred in the complaint, was on the 9th day of January, 1869. The complaint does not aver that no other accounting was had or settlement made, and in the absence of such averment, the presumption must be, we think, that the defendant rendered his accounts and settled with the county board at the end of each year as required by law. This presumption arises from the public official character of the parties, both of the defendant and of the board of supervisors, nothing to the contrary having been averred in the complaint, or admitted by the defendant. It is the ordinary presumption in favor of the correctness of official action and that public officers do their duty.

In *Cotton v. Sharpstein*, 14 Wis., 226, which was an action like the present, except that the agency was merely a private one, it was stated as a *quaere*, whether a count alleging merely, that the defendant had collected certain money for the plaintiff as his attorney at law, and had not, though often requested, accounted for or paid it to the plaintiff, contained a sufficient allegation of a conversion.

In a case like the present, where the moneys alleged to have been converted consist of some thousands of small sums or items received through a period of ten years by a public officer, the specifications of which in a schedule annexed to the complaint constitute a ponderous document of nearly 2,300 folios of written matter, and where, in presumption of law at least, ten annual accountings and settlements, embracing or which might have embraced the same sums or items, have taken place, it is not too much, we think, to say that the general

averment, "that the defendant, though often requested so to do, has not accounted for or paid over the moneys, but has refused and still does refuse to do so, and has converted the same to his own use," is not a sufficient averment of facts to show a conversion of the moneys. Neither do we think that a general averment, as above shown, of a demand and refusal is sufficient, or that the facts being admitted, as there pleaded, constitute sufficient evidence of a conversion.

The request, in order to put the defendant in default, and to show that he has been guilty of a conversion in such a case as this, ought to be a particular request, from which it would appear that his attention was called to the very sums or items and all of them which it was claimed he should have accounted for and paid over, but had not; and it should furthermore appear that reasonable time and opportunity was afforded him to examine them, and to inspect and compare the public records, documents and vouchers, and that then he had wrongfully refused to account for and pay over the moneys. The request should be such as to show, that the defendant had full and fair opportunity to correct the accounts, if satisfied that they were erroneous, and to tender or pay over the moneys and save the costs of an action, and the facts pleaded should be as comprehensive and explicit as the proofs to be made upon the trial.

And the allegation of demand and refusal is equally defective and for the same reasons. The demand was that the defendant pay over "the balance of all moneys remaining in his hands and received by him as such clerk and agent as aforesaid." It does not appear that the defendant was informed what the balance was or was claimed to be, or in what it consisted, or how it was made up, or that any means or facilities were afforded him for ascertaining. He was required, at the peril of being charged in tort for the conversion, to pay over the balance, without even being told in round numbers what the balance claimed was. The demand should have been in all respects what we have said the request should be, for both in case of this kind, serve the same purpose.

If instead of this action in tort, the defendant had been sued upon his official bond or bonds for not accounting for and paying over the same moneys, and breaches had been assigned in the same words as in this complaint of request and refusal, or demand and refusal, such assignments would have been bad on demurrer as showing no violation of the conditions of the bonds. *The Board of Supervisors of Iowa County v. Vivian, Treasurer and others*, 29 Wis. *Supervisors etc., v. Kirby*, 25 Wis., 498; *Wolf v. Stoddard*, ib., 503. It would be something very remarkable in the history of pleading, should it be held that the same facts which *would not* constitute a breach of the official bond of a public officer in not accounting for and paying over public money in his hands, *would* constitute a tortious and wrongful conversion of the same moneys for which an action *ex delicto* might be maintained against him. We think no statement of facts in a case like this not sufficient to show a breach of the official bond growing out of the same transactions, will be sufficient to show a conversion of the moneys.

*By the Court.*—Order reversed and cause remanded.